Tammy Hussin, Esq. (Bar No. 155290)
Hussin Law Firm
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel. (877) 677-5397
Tammy@HussinLaw.com

Attorney for Plaintiff, Nathaniel Todman

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| Nathaniel Todman,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Bank of America, N.A.<br><br>　　　　　Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br>**1. VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT, 15 U.S.C. §1693, *ET. SEQ.*****<br>**2. BREACH OF CONTRACT** |

　　　For this Complaint the Plaintiff, Nathaniel Todman, by and through his undersigned counsel, states as follows:

---

COMPLAINT FOR DAMAGES

1. This action arises out of violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693, *et. seq.* ("EFTA") and Breach of Contract.

2. Plaintiff, Nathaniel Todman (hereafter "Plaintiff"), is an adult individual residing in San Bernadino County, California.

3. Defendant, Bank of America Bank, N.A. ("Bank of America" or "Defendant"), is incorporated in Delaware, and regularly conducts business in this judicial district and throughout the state of California.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 with respect to the cause of action arising under the EFTA. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the acts or omissions giving rise to the claims in this Complaint occurred in this District, and because Defendant is subject to the Court's personal jurisdiction with respect to this action.

## BACKGROUND

3. Over the last decade, Cybercrime has risen at an exponential rate. *See, FTC Consumer Sentinel Network Data Base* (Feb. 2022).[1] In 2021 alone, the FTC received 5.7 million fraud reports with a combined total of $5.9 billion dollars in losses, and identity theft claims increased 27% in a single year. *Id*. at p. 6. Sophisticated criminals are able to hack directly into bank accounts using a variety of nefarious means. They can obtain vital login credentials, including passwords and PIN numbers, sell the account credentials on the dark web, ultimately leading to large amounts of money

---

[1] https://www.ftc.gov/system/files/ftc_gov/pdf/CSN%20Annual%20Data%20Book%202021%20Final%20PDF.pdf

getting syphoned from customer bank accounts on an annual basis. In fact, the FTC reported that unauthorized bank transfers and payments accounted for the highest aggregate fraud losses in 2021 ($756 million). *Id*. at p. 5.

4. Unsurprisingly, the growing increase in bank account cybercrime has led to a mounting surge of bank customers complaining of unauthorized transactions. When investigating customer claims of fraudulent transactions, financial institutions, including Bank of America, have specific statutory obligations under the EFTA. Investigations of fraudulent transactions conducted by a bank "must be reasonable." 71 Fed. Reg. 1638, 1654 (Jan. 10, 2006).

5. Regulation E, 12 C.F.R. § 1005.11(c)(4), requires that a financial institution in investigating an error must conduct, at a minimum, a "review of its own records regarding [the] alleged error." 12 C.F.R §1005.11(c)(4). This review must necessarily include at least "any relevant information within the institution's own records." 12 C.F.R. Part 1005, Supp. I, Comment 11(c)(4)-5.

6. Bank of America is one of the largest banks in the nation, and one of the most notorious for mistreating and stealing from its customers. Bank of America has a long history of ignoring state and federal laws and systematically engaging in unfair and unlawful business practices, causing widespread injuries to consumers across the country. The bank's nefarious and illegal antics have caused it to incur literally ***billions*** of dollars in government fines. In fact, since 2000, Bank of America has been fined by the government 251 times, with a whopping $82.9 billion in racked up fines, more than any other bank in history.[2]

7. Part of these fines include penalties against Defendant for systemic violations of the EFTA. Indeed, just recently, the Consumer Financial Protection Bureau ("CFPB") determined systematically violates the EFTA when evaluating

---

[2] *See, e.g.,* https://thefintechtimes.com/bank-of-america-has-accumulated-82-9-billion-in-fines-since-2000-brokerchooser-study-finds/.

customer disputes of unauthorized transactions. *See, In the Matter of Bank of America, N.A.,* Consent Order, CFPB 2022-CFPB-0004, Document 1 (July 14, 2022). The CFPB determined that Bank of America routinely violates the EFTA by failing to conduct reasonable investigations, relies on archaic and ineffectual metrics to analyze customer fraud claims, and systematically ignores obvious indicia of fraud the bank has in its own records. In doing so, Bank of America wrongfully denies customer fraud disputes, accuses its customers of lying, and refuses to restore the stolen funds back into their accounts, all of which violates the EFTA. *Id*.

8. Adding insult to injury, Bank of America has a weak and outdated security system, making it easier for fraudsters to gain unauthorized access to customer accounts.

9. Bank of America has a duty to maintain a reasonable level of security to avoid unauthorized account access.

10. As part of this effort, Bank of America has a system that monitors the IP addresses of its customers' online account activity; however, Bank of America systematically ignores its own warning signs, and does nothing to stop potential fraudsters from assuming control of customer accounts and conducting unauthorized transactions.

11. Bank of America's non-compliance with the EFTA results in severe hardships for many consumers. This is especially true for consumers, like the Plaintiff here, who lack additional savings to cover essential expenses like housing, food, and medicine. A financial institution's unwillingness to comply with the requirements of the EFTA often times leads to devastating results.

12. In determining the amount of liability in an action brought under the EFTA, "the court shall consider… the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional." 15 U.S.C. §1693m(b)(1).

13. Bank of America's disrespect for the EFTA is persistent and systemic, its acts and omissions are intentional and despicable, and the bank must be held accountable to fullest extent possible under the law.

### **BANK OF AMERICA AND PLAINTIFF**

14. On or around July 3, 2023, Plaintiff's wallet was stolen, including his Bank of America debt card, license, and social security card.

15. Beginning on July 3, 2023, and continuing through the end of August, the thief accessed Plaintiff's account and conducted dozens of unauthorized electronic funds transactions. Plaintiff discovered the fraud and timely reported the same to Bank of America.

16. Plaintiff also filed a police report and an FTC Identity Theft affidavit and provided the same to Bank of America.

17. In November of 2023, the thief accessed Plaintiff's account again and conducted multiple unauthorized electronic funds transactions. Plaintiff discovered the fraud and timely reported the same to Bank of America.

18. In March of 2024, the thief yet again accessed Plaintiff's account and conducted multiple unauthorized electronic funds transactions. Plaintiff discovered the fraud and timely reported the same to Bank of America.

19. In all, the thief stole $18,976.60 from Plaintiff's account.

20. During this whole time, Plaintiff was locked out of his account and unable to access his funds. The funds in the Bank of America account are comprised solely of Plaintiff's unemployment benefits, and he needed that money desperately in order to pay for rent, food, and medicine. Plaintiff has no other savings.

21. He called Bank of America representatives dozens of times frantically trying to get the funds restored and to gain access to his account, but to no avail. Plaintiff was met with inept representatives, confusing statements, and broken promises.

22. Bank of America was required under the EFTA to conduct timely and reasonable investigations, but the bank did neither.

23. Bank of America never provided Plaintiff with a provisional credit and it took longer than ten days to complete the investigations.

24. Bank of America eventually reimbursed Plaintiff for $1,000.00 of unauthorized charges, but never reimbursed Plaintiff for any of the remaining unauthorized transactions.

25. For the fraud claims rejected by Bank of America, Plaintiff received letters from Bank of America saying only that "no error occurred". The letters did not articulate a reason for the bank's conclusions or why the stolen funds would not be restored to Plaintiff.

26. Plaintiff called the bank to inquire about the conclusion of the investigations, but representatives were unable to articulate a reason for the denials.

27. Plaintiff requested that Bank of America provide him with the documents it relied on during the investigations; however, to this day Plaintiff has not been provided with any such documentation.

28. Bank of America's actions and inactions caused, and continues to cause, Plaintiff to suffer severe emotional distress, including but not limited to panic attacks, anxiety, frustration, anger, hopelessness, depression, outrage, sleeplessness, fear, embarrassment, shame, humiliation, outrage, and worry.

### COUNT I
### ELECTRONIC FUNDS TRANSACTION ACT
### 15 U.S.C. §1693, *et. seq.*

29. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

30. Plaintiff did not give actual authority to the fraudster to initiate the electronic transfers, and therefore the transactions constituted unauthorized electronic fund transfers under §1693a(12).

31. Plaintiff notified Bank of America of the error within 60 days of gaining access to his account statements, and therefore Bank of America was obligated to comply with the error investigation procedures of the EFTA. 12 C.F.R. § 1005.11(b)(1)(i).

32. Bank of America is liable to Plaintiff for treble damages under 15 U.S.C. § 1693f(e) because it did not issue Plaintiff a sufficient provisional credit within 10 days and it failed to conduct a good faith investigation and did not have a reasonable basis for believing Plaintiff's account was not in error. 15 U.S.C. § 1693f(e)(1).

33. Bank of America knowingly and/or willfully concluded that Plaintiff had performed the disputed transactions when such a conclusion could not reasonably have been drawn from the evidence available to it at the time of its investigation, in violation of §1693f(e)(2).

34. Bank of America failed to provide Plaintiff with an adequate explanation as to the results of its investigation in violation of 15 U.S.C. § 1693f.

35. Though Plaintiff requested, Bank of America failed to provide Plaintiff with copies of documents it relied on to conduct its investigation, in violation of 15 U.S.C. § 1693f(d).

36. As a direct and proximate result of knowingly and/or willfully violating §§ 1693f(e)(1)(B) and (2), Plaintiff is entitled to treble damages, statutory damages, as well as attorney's fees and costs.

## COUNT II
## BREACH OF CONTRACT

85. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

86. The contract between Plaintiff and Defendant provides:

> Federal law (described in the section below entitled "Regulation E Liability Disclosure; Your Liability in Case of Loss, Theft or Unauthorized Transactions") may limit your liability for unauthorized transactions in some circumstances. Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to the following terms and conditions…

87. Plaintiff did all that was required of him by promptly reporting the unauthorized transactions to Bank of America, yet Bank of America refused to restore the stolen funds back to Plaintiff.

88. Contrary to that binding agreement, Defendant refused to honor it, and instead basically accused Plaintiff of lying and refused to refund his stolen money. At the very least, by failing to limit Plaintiff's losses to those amounts set forth in the contract, Bank of America materially breached Plaintiff's account agreement.

89. Bank of America also promised to keep Plaintiff's account secure from unauthorized access. Bank of America materially breached its promised to Plaintiff by failing to identify obvious signs of security risks, and by failing to adequately protect his account from being compromised.

90. As a direct and proximate result of Defendant's breach of the Account Agreement, Plaintiff lost more funds than he should have as a result of unauthorized transfers, and he is therefore entitled to an award of actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against the Defendant:

A. An award of actual damages, statutory damages, treble damages, punitive damages, and reasonable attorneys fees and costs; and

B. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED: April 23, 2024

By: */s/ Tammy Hussin*
Tammy Hussin, Esq.
Hussin Law Firm
Attorney for Plaintiff, Nathaniel Todman